## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TRUSTMARK HEALTH BENEFITS, INC., | |
| Plaintiff, | |
| vs. | Civil Action File No.: |
| WALTON COUNTY BOARD OF COMMISSIONERS, MSI BENEFITS GROUP and MATTHEW S. BIDWELL, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff Trustmark Health Benefits, Inc. ("Trustmark"), by its undersigned counsel, complains of Defendants Walton County Board of Commissioners ("BOC"), MSI Benefits Group ("MSI") and Matthew S. Bidwell ("Bidwell") (collectively "Defendants") as follows:

### ***The Parties***

1.

Trustmark is a company, incorporated under the laws of Delaware with a principal place of business in Lake Forest, Illinois.  Trustmark contracts with public and private health plan administrators to provide third party claims review services.

1

2.

BOC is the governing body of Walton County, Georgia, and a citizen of Georgia. BOC is the plan sponsor of a self-funded health and welfare benefit plan for eligible employees of Walton County and their dependents.

3.

MSI is an employee benefit consulting and brokerage firm organized under the law of the State of Georgia with its principal place of business in Kennesaw, Cobb County, Georgia.

4.

Bidwell is a licensed insurance broker, affiliated with MSI, with extensive experience in employee welfare benefit programs, specifically, health benefit programs, for Georgia's municipalities and counties.  Bidwell is a citizen of Georgia.

## *Jurisdiction and Venue*

5.

This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1) in that there is diversity between the parties and the amount in controversy exceeds $75,000.00.

6.

Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) since a substantial part of the events or omissions giving rise to this claim occurred within the Northern District of Georgia.

### *Nature of Action*

7.

Trustmark seeks damages for BOC's breach of the Administrative Services Agreement ("ASA") entered into between Trustmark and BOC effective July 1, 2021, and fraudulent misrepresentations regarding same, and as a result of MSI's and Bidwell's respective fraudulent and negligent actions and omissions in brokering the ASA. A true and correct copy of the ASA is attached hereto as **Exhibit A** ("Ex. A") and fully incorporated by reference herein.

### *Statement of Facts*

8.

After BOC decided to opt out of the group health program available to all Georgia counties, the ACCG group health program, BOC's then broker Insurance Office of America ("IOA") solicited Trustmark's proposal for administration of health claims and stop-loss insurance coverage in connection with BOC's self-

3

funded health and welfare benefit plan ("Plan"), with 562 participating employees and their respective dependents, starting July 1, 2021.

9.

Trustmark provided proposals for 12 and 24 months of services. BOC subsequently appointed IOA as its broker of record and elected to enter into a 36 months/3 year agreement at discounted rates with an annual wellness credit in the amount of $50,000.00.

10.

Relying on BOC's representations, Trustmark worked with IOA to implement the relationship and commenced providing claims administration services to the Plan on July 1, 2021.

11.

On July 28, 2021, Trustmark provided IOA with the ASA, memorializing the terms of the relationship between Trustmark and BOC for a period of three (3) years, stating "[p]lease have the County sign and return a copy to us.  Our Regional President will sign and we'll return a fully executed copy to you."

4

12.

In September 2021, due to service and implementation issues, BOC changed its broker of record from IOA to MSI, its previous broker since at least 2016. The meeting minutes reflect the following:

> Discussion and possible action regarding Healthcare Broker - Insurance Office of America Human Resources Director Melissia Rusk addressed the Board with concerns and problems the County is experiencing with Insurance Office of America and requested that the services of Insurance Office of America be terminated immediately and that the Board return to a contract with MSI Benefits, the former broker. She stated that employees and covered dependents have experienced a total of 623 medical and pharmacy denials since July1st. She also cited numerous examples of unacceptable customer service and support. Motion: Chairman Thompson made a motion to notify and terminate the services of Insurance Office of America effective today if possible and give HR Director Melissia Rusk the authority to specify the specific date. Commissioner Adams seconded the motion. All Commissioners including Chairman Thompson voted in favor.

13.

The change in BOC's broker of record from IOA to MSI resulted in several revisions to the ASA, including reducing the term from 3 years to 2 years. Trustmark adjusted the ASA to reflect the desired changes and sent a final draft to Bidwell at MSI on November 3, 2021, relying on his expertise in putting the ASA into effect. The same day, BOC through its broker Bidwell at MSI, returned a signed copy of the prior ASA draft provided in July, reflecting a 3 year term, to Trustmark.

14.

On November 4, 2021, Trustmark sent the final ASA draft, which included changes to the COBRA administration, to Bidwell at MSI, pointing out that the draft now also reflected the three (3) year term and the COBRA administration changes, asking "[A]re you OK getting this signed? Or prefer we try to use the original signature you sent yesterday and handle the Cobra termination by a letter??"

15.

On November 9, 2021, Bidwell sent the signed ASA to Trustmark, bearing BOC's Human Resources Director Melissia Rusk's signature.   Relying on the validity of Ms. Rusk's signature, Trustmark's Regional President Kimberly A. Fiori countersigned the same day.  *See* Ex. A.

16.

In reliance on MSI, Bidwell and BOC's representations, Trustmark continued to provide claims administration services to the Plan.

17.

In or around April 2022, BOC learned that the usual two year waiting period until permitted reentry into the ACCG group health program had been reduced to one (1) year and received a proposal to rejoin.  In an effort to do so and rid itself of the contractual relationship with Trustmark, BOC involved its attorneys at Atkinson

Ferguson, LLC, who subsequently contacted Matt Bidwell at MSI, informing him

that in their opinion the ASA is void and unenforceable and asking him to let

Trustmark know.

18.

Bidwell at MSI, as agent of BOC, informed Trustmark on April 27, 2022:

[…]

The County Attorney at Walton has reviewed the contract in place for
the administrative services with Trustmark. Please see his remarks
below.
The County is wishing for an amicable settlement on this issue. I think
the County would like to be offered a contract to accept that would
reflect the year arrangement in which they had coverage with
Trustmark. Please let me know what Trustmark can do. Please feel
free to correspond with the County Attorney, directly, if you feel that
would be best. His information is below,
Thank you.

A true and correct copy of Bidwell's April 27, 2022 email to Trustmark is attached

hereto as **Exhibit B.**

19.

On May 6, 2022, MSI employee Zori Worrall, as BOC's agent, informed

Trustmark of BOC's termination of its relationship with Trustmark as of July 1,

2022. Her email states:

[…]
Walton County decided to change back to Anthem BCSB [sic] and
wishes to cancel their coverage and services with Trustmark effective

7-1-2022. The group is requesting Trustmark to administer runout medical claims.
The FSA and DCA plans are also terminating with 60 days runout period.  Please provided the carryover balances on September 1st, 2022.
(I am so sorry to be the bearer of bad news.)

A true and correct copy of Ms. Worrall's email is attached hereto as **Exhibit C.**

20.

Attached to Ms. Worrall's email on Walton County's letterhead and signed by Chairman David Thompson was a cancellation notice dated "May 2022", stating that "Walton County BOC wishes to cancel all services with Trustmark effective July 1, 2022.  Please administer runout medical claims. […] We appreciate the service over the past year but have decided that a change is needed at this time."  A true and correct copy of Chairman Thompson's letter is attached hereto as **Exhibit D.**

## <u>COUNT I AGAINST BOC</u>

## <u>BREACH OF CONTRACT</u>

21.

Trustmark restates, realleges and incorporates its allegations set out in paragraphs 1 through 19 above as if fully set forth herein.

8

22.

For due consideration, Trustmark and BOC entered into a valid and binding contract effective July 1, 2022, the ASA, according to the terms of which Trustmark rendered claims services to BOC's health and welfare benefit plan for its eligible employees and their dependents and BOC paid Trustmark a monthly administrative fee. *See* Ex. A.

23.

The ASA is governed in accordance with the laws of the state of Illinois, without regard to conflict of law provisions. *See* Ex. A, p. 5.

24.

BOC's Human Resources Director Melissia Rusk signed the ASA verifying that she was authorized to do so:

**ACKNOWLEDGMENT AND APPROVAL**

The undersigned Plan Sponsor hereby certifies that he/she (1) is authorized to sign on behalf of the Plan Administrator and the Plan, (2) acknowledges receipt of the foregoing explanation of services and fees and has read and understands it, and (3) approves the purchase of such insurance (if applicable) and the payment to Health Benefits of such sales commissions, service fees and other compensation arrangements as listed. The addenda attached hereto are hereby incorporated into the Agreement.

Ex. A, p. 14.

25.

Pursuant to the terms of the ASA, and in reliance on IOA's, MSI's and BOC's representations that Ms. Rusk was duly authorized to sign the ASA and bind BOC,

Trustmark provided and is still providing claims services to the Plan, administering health benefit claims for BOC's employees and their dependents, including for Chairman Thompson and the members of its board.

26.

During the negotiation of the terms of the ASA, BOC specifically requested a three (3) year term for the ASA and subsequently signed the ASA, providing as follows:

> 6.01 <u>Term</u>. This Agreement and referenced Addenda shall be in effect for a period of three (3) years from the Effective Date (the "Initial Term") and shall renew automatically thereafter for the successive one (1) year periods of time (each such period, a "Renewal Term" and collectively with the Initial Term, the "Term"), unless otherwise terminated or renegotiated in accordance with this Agreement. […]

Ex. A, p. 3.

27.

The ASA provides as follows pertaining to a termination of the agreement:

> 6.03 <u>Termination</u>. This Agreement may be terminated effective as of the time specified below:
> A. By either party, with or without cause, by giving written notice to the other party at least ninety (90) days prior to the last day of the applicable Initial Term or Renewal Term, effective at the end of the applicable Initial Term or Renewal Term; […]

Ex. A, p. 3.

272313435v.1

28.

In direct breach of the ASA's termination provision and the inherent covenant of good faith and fair dealing, BOC sent a notice of cancellation of the ASA on May 3, 2022, less than 60 days before the end of the first year of service.

29.

Trustmark remains willing and able to provide claim services to the Plan for the entire term of the ASA.

30.

As a direct result of BOC's breach of the ASA's term and termination provisions and the covenant of good faith and fair dealing, Trustmark has been damaged in the amount of $705,923.00.

## COUNT II AGAINST BOC
## PLEADING IN THE ALTERNATIVE

## EQUITABLE ESTOPPEL

31.

Trustmark restates, realleges and incorporates its allegations set out in paragraphs 1 through 27 as if fully set forth herein.

32.

BOC, through IOA, solicited proposals for claims services and stop loss coverage from Trustmark for its Plan effective July 1, 2021, accepted Trustmark's

11

proposal and subsequently had its Human Resources Director Melissia Rusk sign the ASA for a three (3) year term at discounted rate, knowing full well that Ms. Rusk was not authorized to sign the ASA and could not validly bind BOC.

33.

Trustmark, in executing the ASA and providing claims administration services to BOC, relied on the representations of BOC and IOA as well as MSI, that Ms. Rusk was duly authorized to sign the ASA and bind BOC for a three year term.

34.

BOC, in concealing the lack of authorization of Ms. Rusk to sign the ASA and bind BOC, expected Trustmark to provide claims administration services to BOC, and do so at a discounted rate with an annual wellness credit given the three year term of the agreement.

35.

Allowing BOC to terminate the ASA in breach of its provisions, claiming it is unenforceable, prejudices Trustmark, causing damages in the amount of $705,923.

## COUNT III AGAINST BOC
## PLEADING IN THE ALTERNATIVE

## FRAUDULENT MISREPRESENTATION, FRAUD IN THE INDUCEMENT

### 36.

Trustmark restates, realleges and incorporates its allegations set out in paragraphs 1 through 27 as if fully set forth herein.

### 37.

BOC, through IOA, solicited proposals for claims services and stop loss coverage from Trustmark for its Plan effective July 1, 2021, accepted Trustmark's proposal and subsequently had its Human Resources Director Melissia Rusk sign the ASA for a three (3) year term at a discounted rate, knowing full well that Ms. Rusk was not authorized to sign the ASA and could not validly bind BOC.

### 38.

Trustmark, in executing the ASA and providing claims administration services to BOC, relied on the representations of BOC and MSI, that Ms. Rusk was duly authorized to sign the ASA and bind BOC for a three (3) year term.

### 39.

BOC, in concealing the lack of authorization of Ms. Rusk to sign the ASA and bind BOC, intended to induce Trustmark to enter into a relationship it would be able to terminate at will without repercussion with Trustmark providing claims

administration services to BOC, and do so at a discounted rate with an annual wellness credit given the pretended three year term of the agreement.

40.

As a result of its reliance on Ms. Rusk's pretended authorization to bind BOC, Trustmark is damaged in the amount of $705,923.00.

**COUNT IV AGAINST BOC, MSI and BIDWELL**
**PLEADING IN THE ALTERNATIVE**

**NEGLIGENT MISREPRESENTATION**

41.

Trustmark restates, realleges and incorporates its allegations set out in paragraphs 1 through 27 as if fully set forth herein.

42.

BOC, through IOA, solicited proposals for claims services and stop loss coverage from Trustmark for its Plan effective July 1, 2021, accepted Trustmark's proposal and subsequently had its Human Resources Director Melissia Rusk sign the ASA for a three (3) year term at discounted rate with reckless disregard to ensuring that Ms. Rusk was properly authorized to sign the ASA and validly bind BOC.

43.

Trustmark, in executing the ASA and providing claims administration services to BOC, relied on the representations of BOC, MSI and Bidwell, that Ms. Rusk was duly authorized to sign the ASA and bind BOC for a three year term.

44.

BOC, while recklessly failing to ensure that Ms. Rusk was properly authorized to sign the ASA and bind BOC, intended to induce Trustmark to enter into a relationship and provide claims administration services to BOC, and do so at a discounted rate with an annual wellness credit given the three (3) year term of the agreement.

45.

MSI, while recklessly failing to ensure that BOC entered into a binding agreement, intended to induce Trustmark to enter into a relationship and provide claims administration services to BOC in an effort to obtain commission payments.

46.

Bidwell, while recklessly failing to ensure that BOC entered into a binding agreement, intended to induce Trustmark to enter into a relationship and provide claims administration services to BOC in an effort to obtain commission payments.

47.

BOC, MSI and Bidwell, given its and his lengthy relationship with BOC, had superior knowledge of the procedures regarding the signing of binding contracts for Georgia counties, and thus, owed a duty to Trustmark to communicate accurate information, including the lack of authorization on the part of Ms. Rusk to bind BOC.

48.

As a result of its reliance on Ms. Rusk's pretended authorization to bind BOC, Trustmark is damaged in the amount of $705,923.00.

## COUNT V AGAINST MSI and BIDWELL
## PLEADING IN THE ALTERNATIVE

## NEGLIGENCE

49.

Trustmark restates, realleges and incorporates its allegations set out in paragraphs 1 through 27 as if fully set forth herein.

50.

BOC, through IOA, solicited proposals for claims services and stop loss coverage from Trustmark for its Plan effective July 1, 2021, accepted Trustmark's proposal and subsequently had its Human Resources Director Melissia Rusk sign the ASA for a three (3) year term at discounted rate with reckless disregard to

ensuring that Ms. Rusk was properly authorized to sign the ASA and validly bind BOC.

51.

Trustmark, in executing the ASA and providing claims administration services to BOC, relied on the representations of MSI, that it had obtained a binding signature for a three (3) year term from BOC when it provided Trustmark with the ASA signed by Ms. Rusk.

52.

Trustmark, in executing the ASA and providing claims administration services to BOC, relied on the representations of Bidwell, that he had obtained a binding signature for a three (3) year term from BOC when he provided Trustmark with the ASA signed by Ms. Rusk.

53.

MSI, while recklessly failing to ensure that BOC entered into a binding agreement, intended to induce Trustmark to enter into a relationship and provide claims administration services to BOC in an effort to obtain commission payments.

54.

Bidwell, while recklessly failing to ensure that BOC entered into a binding agreement, intended to induce Trustmark to enter into a relationship and provide claims administration services to BOC in an effort to obtain commission payments.

55.

MSI, given its lengthy relationship with BOC, had superior knowledge of the procedures regarding the signing of binding contracts for Georgia counties, and thus, owed a duty to Trustmark to communicate accurate information, including the lack of authorization on the part of Ms. Rusk to bind BOC.

56.

Bidwell, given his lengthy relationship with BOC, had superior knowledge of the procedures regarding the signing of binding contracts for Georgia counties, and thus, owed a duty to Trustmark to communicate accurate information, including the lack of authorization on the part of Ms. Rusk to bind BOC.

57.

MSI breached its duty of care in failing to ensure that a binding agreement between BOC and Trustmark was achieved while being fully aware that Trustmark relied upon the terms of the ASA.

58.

Bidwell breached his duty of care in failing to ensure that a binding agreement between BOC and Trustmark was achieved while being fully aware that Trustmark relied upon the terms of the ASA.

59.

As a result of its reliance on MSI's and Bidwell's actions, omissions and representations, Trustmark is damaged in the amount of $705,923.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trustmark Health Benefits, Inc. requests judgment against Defendants as follows:

(1) Find and hold the Administrative Services Agreement valid and enforceable, requiring Defendant Walton County Board of Commissioners to honor its terms and duration;

(2) In the alternative, find and hold that Defendant Walton County Board of Commissioners breached the terms of the Administrative Services Agreement and awarding Trustmark compensatory and consequential damages;

(3) In the alternative, find and hold that Defendant Walton County Board of Commissioners are equitably estopped from taking advantage of Ms.

19

Rusk's lack of authorization to enter into a binding agreement, requiring Defendant Walton County Board of Commissioners to honor its terms and duration;

(4) Find and hold that Defendants Walton County Board of Commissioners, MSI Benefits Group and Matthew S. Bidwell fraudulently and/or negligently misrepresented material facts and/or, as to MSI Benefits Group and Matthew S. Bidwell, breached their respective duty of care towards Trustmark, awarding Trustmark compensatory and consequential damages;

(5) Awarding Trustmark punitive damages;

(6) Awarding Trustmark attorneys' fees for having to commence this action as well as the costs of this action;

(7) Awarding such other and further relief as may be just and equitable.

Respectfully submitted this 23rd day of June, 2022.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

3348 Peachtree Road, NE
Suite 1400
Atlanta, GA  30326
470-419-6650 (telephone)
470-419-6651 (facsimile)
eleanor.jolley@wilsonelser.com

*/s/ Eleanor G. Jolley*
Eleanor G. Jolley
GA Bar No. 602577

***Counsel for Plaintiff***

20